MACK, *Executor, Appellant*, v. HEISS.

1. **Husband and Wife**; ANTE-NUPTIAL CONTRACT: DOWER: HOME-
STEAD. An ante-nuptial contract between a testator and his wife,
by the terms of which, in consideration of the wife's agreement to
release her claim of dower in his estate, he gave and bequeathed to
her $1,000 to be paid to her by his executor, and agreed to allow
her to keep all the property she possessed at the time of the mar-
riage, or might afterwards acquire, only releases her right of dower,
and does not affect her right to a homestead in the testator's prop-
erty.

2. **Homestead, Release of by Wife**: DEED. A deed by the wife of
the testator, after his death, to the executor, remising, releasing
and quit-claiming all her right, title and interest in the testator's
estate, whether of dower or otherwise, including every claim and
demand which she might have against the estate for allowance, as
widow or otherwise, and whether under the will or under the law,
conveys the widow's right of homestead.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*John G. Chandler* for appellant.

(1) The plain purpose of the ante-nuptial contract
was to completely sever the property interests of the
parties. The word "dower" was plainly used, not in a
restricted technical sense, but in a broad and compre-
hensive sense. The instrument was evidently drafted by
an inexperienced person, and the word "dower" was
employed by the parties as expressive of all the wife's
rights in her husband's estate. 2 Parsons on Contracts,
500, 501, notes *t* and *n*. "In order to ascertain the inten-
tion of the parties, we must look not only to the words;
but to the subject matter of the contract." *Perry v.
Craig*, 3 Mo. 516. In the case at bar the subject matter

was the entire property, real and personal, of the parties about to marry. The intent, a complete severance of property interests. "The purport of the instrument is to be gathered from the general tenor of it, and not from any particular clause." *Schultze v. Bailey*, 40 Mo. 69, 74. The circumstances under which an instrument is made may be looked to, in aid of its construction. The rules of interpreting contracts ought not to be subtile— are not an art of logic—but are intended for persons of common understanding—are plain reason." *Gathwright v. Callaway Co.*, 10 Mo. 663. The terms used in a contract are to be construed according to their obvious meaning, and as generally understood in the community, and not according to their usage among a particular class of men. *Pavy v. Burch*, 3 Mo. 477-8. (2) The deed released to the executor every right, of whatever kind and in whatever character the widow had or might claim in the husband's estate, and it required no consideration to support it. *McFarland v. Baze's Adm'r*, 24 Mo. 156. Mrs. Heiss cannot impeach her deed under the issues in this case. The evidence must correspond with the issues and be confined to the point in issue. *State v. Roberts*, 62 Mo. 388; *Buffington v. Railroad*, 64 Mo. 246; *Coole v. Railroad*, 60 Mo. 227; *Lester v. Railroad*, 60 Mo. 265; *Eddy v. Baldwin*, 32 Mo. 369; *Green v. Gallagher*, 35 Mo. 226. A defendant cannot make a defence by his evidence on the trial different from that made by the pleadings. *Currier v. Lowe*, 32 Mo. 203. No acknowledgment was necessary. She was not a married woman, but a widow—*sui juris*—all her acts binding upon her. She said she could not read the deed, and that it was not read to her. She is flatly contradicted by the magistrate and the executor, and is unsupported by any fact or circumstance. If she were wholly uncontradicted her testimony by itself would not outweigh her acknowledgment. This point has been determined in several cases by this court even against a

married woman. ' It is held that when the only evidence to impeach the certificate of acknowledgment is that of the grantor, the other side is not bound to produce any evidence in reply. "As the only testimony attacking the truth of the certificate was that of the plaintiff (the grantor), the defendant was not called upon to produce any evidence in rebuttal. There were no concurring circumstances which tended to support the plaintiff." *Biggers v. St. L. Mut. N. B. Co.*, 9 Mo. App. 210; *Riecke v. Westenhoff*, 10 Mo. App. 358; *Morrison v. McKee*, 11 Mo. App. 594; *Bohan v. Casy*, 5 Mo. App. 111.

*Zach. J. Mitchell* for respondent.

RAY, J.—A trial of this cause, before the circuit court of St. Louis, without the intervention of a jury, resulted in a judgment for defendant, which, on appeal by plaintiff therefrom, was affirmed in the court of appeals. As no report of the opinion of that court, per Thompson, J., has been made, beyond an imperfect statement or digest thereof, which appears in the appendix to 15 Mo. App. Rep. 595 and 596, we deem it necessary and proper, in determining this appeal, taken by plaintiff from that decision, to make a fuller statement of the controlling facts in the case.

The plaintiff is the executor of the will of George Heiss, deceased, and the defendant, Mary Heiss, is the widow of said George Heiss, and the action is in the nature of ejectment. The petition states the facts, which show that the premises sued for were the homestead of the said George Heiss, on which he resided at the time of his death, and also contains the usual allegations in the ordinary action of ejectment. The answer of defendant sets up, in appropriate averments, the homestead right as her defence to the action, and it was admitted at the trial that the defendant was the widow of deceased, and was, at the time of his decease, living with

him as his wife on the premises, and continues in possession thereof, and that the amount, in quantity and value of said premises, is not greater than she would be entitled to as a homestead, if, under the facts of the case, she is entitled to homestead at all. In 1873, plaintiff.'s said testator, George Heiss, and defendant, entered into an ante-nuptial contract, which was acknowledged and recorded, by which, in consideration of her agreement to release her claim of dower in his estate, he gives and bequeathes to his future wife, in lieu of dower, the sum of $1,000, to be paid to her by his executor or administrator, or legal representative, as soon as convenient after his decease, and agrees to allow her to keep all the property she then possessed, or should acquire, as her separate and individual property, free from his interference, or any claims he might have as husband.

Afterwards, said George Heiss made his will, and the first statement therein, after declaring the making and publishing thereof, is as follows : "I, and my beloved wife, Mary Heiss, have settled our affairs to our own satisfaction, as will be shown by our marriage contract." The plaintiff, Mack, was appointed executor by the will, and, after qualifying as such, advanced and paid to the defendant the sum of $1,000, and the defendant thereupon executed the following instrument, which bears date August 3, 1882:

"Know all men by these presents that, in consideration of the sum of $1,000, advanced and paid to me by Abraham Mack, executor of my deceased husband, George Heiss, I do hereby remise, release and forever quit-claim to him, the said Abraham Mack, all my right, title and interest, in the estate of said deceased, whether of dower or otherwise, and including every claim and demand which I might have against said estate for allowance as widow or otherwise, and whether such claims were under the will or under the law ; and I do hereby covenant from time to time to make such further assur-

ance as shall in any contingency whatever be proper to vest in said Abraham Mack, every such right as I may be deemed to have. It being the intention hereof that after said payment and advancement to me, I shall have no further interest whatever in said estate in any character whatever.''

The oral testimony, as to the circumstances of the execution of the deed, cut no figure at the trial prejudicial to the plaintiff, as is apparent from the court's action upon the declarations of law. It is also apparent from its said action in that behalf, that its finding was based upon its construction of some, or all of the written instruments aforesaid. It is, therefore, not necessary to set out in this opinion said oral evidence or said declarations of law, as the only question of merit and value to the parties is as to the construction of the marriage contract, said will and said deed, all of which, it may be added, were read in evidence by plaintiff. Indeed, counsel claims in his brief, that the case turns here upon the construction to be given said instruments. This question he presents in this court in several aspects or views.

I. His first position is, that assuming the reference in the will to be equivalent to a bequest, then the marriage contract alone is sufficient to destroy all claims of defendant to her husband's estate, or any part of it, for the reason that the purpose of said marriage contract was to completely sever the property interests of the parties ; that the contract was drawn by an unskillful hand, the word "dower" being employed in the contract as expressive of all the rights of the wife in the husband's estate. The trouble with this view is, that the marriage contract does not admit of a resort to the rules of construction, some of which we have been referred to in the brief of counsel. There is no ambiguity, conflict or obscurity in the words therein employed. As often as there is occasion to mention the right the future wife is to release, the word "dower" is used. It says nothing

about the right of homestead. There is a total absence of any other expression, general or qualified, in connection with the claim released or intended to be released by the wife. Where this is so, "there is no room for construction and nothing for construction to do." 2 Pars. Cont., 500. As is said by the court of appeals in its opinion, found at length in the transcript, we see no evidence "in the instrument itself which necessarily leads to an inference that it was drawn by an unskillful person, beyond the fact that it failed to say anything about her right of homestead. We are not at liberty to draw any inference from this fact which would vary the legal meaning of the word 'dower,' because we see in it just as much ground for concluding that it was omitted by design as by accident."

II.  The second view in which the case is presented, is that, at all events, the deed executed by defendant, of date August 3, 1882, and a short time after the death of the testator, released to the executor the homestead right as well as dower, and all other rights which she had or might claim in the estate of the husband. The court of appeals declined to adopt this construction of the deed, but held its meaning to be that the widow thereby only released in favor of the executor every interest which she would have in the estate, which, on the death of her husband, the probate of his will and the grant of his letters testamentary, vested in the execution; that the widow's homestead is no part of the estate of the decedent, as the term is used in the administration law; that, as she was in the actual occupation of the homestead at the date of the release, the right of homestead was, therefore, a vested estate in her, and not part of the estate of the deceased husband; that, as she had not agreed in the ante-nuptial contract to release the right of homestead, in consideration of the $1,000, she was under no obligation to do so, to entitle her to the payment of such sum.

In these views of said court, and its said holding in

this behalf, we are not able to concur for a number of reasons. If the homestead was vested in the defendant at the date of the release, she could convey it, and not otherwise, and the fact that it vested under the statute and by operation of law is not material. Nor is it material, as we think, that she had not agreed in the antenuptial contract to release the homestead right, or that she was under no obligation to do so, to entitle her to the payment of such sum out of her husband's estate. The vital question is, has she parted with that right under the said deed. The answer, we may again remark, is one of general denial, and, as we have seen, sets up the homestead right as the defence relied on in bar of the action. The deed in question is not assailed or impeached for want of consideration or otherwise, and no rescission of it is asked.

Why, then, we may ask, should not the deed be read and construed just as the marriage contract was, and if so read, is it not equally plain on its face? Its terms are unambiguous, and apt, and sufficient to release, as it purports to do, all right, title, interest, in the estate, whether of dower or otherwise, and all claims and demands against said estate, whether under the will or under the law. If we are to look to the terms of the deed alone there can be no pretense that they are not broad enough to comprehend the homestead right as well as all others. If the deed and marriage contract are to be read together, which is to control, modify and limit the other? The marriage contract pertains to dower and nothing else, whilst the deed embraces each and every interest, whether of dower, homestead or otherwise. These instruments do not in any way refer to one another, but are manifestly independent instruments. Until the deed is assailed or impeached, or avoided for fraud, mistake or other reason, which was not sought to be done in this action, it must, we think, be held effectual to pass the title. No point has been

made as to the right of the executor to maintain this action of ejectment, or as to the necessity of some order or direction of the court in that behalf. That question, therefore, is not passed on, but waived.

For the reasons indicated the judgment of the court of appeals and of the circuit court will be reversed and the cause remanded. All concur, Norton, C. J., in the result.